1
2
3
4
5

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

6   EVANS CREEK, LLC,                          Case No. 3:20-cv-00724-MMD-WGC

7                              Plaintiff,                      ORDER

8             v.

     CITY OF RENO,

9                              Defendant.

10

11   **I.    SUMMARY**

12          This is a dispute about land use and development. Plaintiff Evans Creek, LLC,

13   alleges that Defendant City of Reno has violated the Fifth Amendment's Takings Clause

14   and the Fourteenth Amendment's Equal Protection Clause by preventing it from

15   developing land formerly known as the Ballardini Ranch in southwest Reno. (ECF No. 1.)

16   Before the Court is the City's motion to dismiss.[1] (ECF No. 8 ("Motion").) The City argues

17   the Complaint lacks factual support sufficient to plausibly allege Plaintiff's claims, and that

18   the claims would necessarily fail on the merits. The City also moves to dismiss or strike

19   references to any conduct prior to 2019.

20          As further explained below, the Court finds both of Plaintiff's claims fail to

21   adequately state a claim upon which relief could be granted and will therefore grant the

22   City's Motion in part. But the Court will also grant Plaintiff leave to amend to state sufficient

23   relevant factual allegations. Finally, the Court will deny the City's motion to exclude

24   references to pre-2019 conduct, as that material is not properly brought in a motion to

25   dismiss.

26   **II.   BACKGROUND**

27          The following facts are adapted from the Complaint. (ECF No. 1.)

28

          ―――――――――――
              [1]Plaintiff responded (ECF No. 10) and the City replied (ECF No. 11).

1

2 **A.     The Property**

The Ballardini Ranch is a parcel of land originally comprising approximately 1,500 acres in unincorporated Washoe County. (*Id.* at 5.) Although there have been past attempts to incorporate part or all of the Ballardini Ranch, the Ballardini family resisted these efforts. (*Id.*) In 1997, Everest Development Company, LLC ("Everest") entered into an agreement with the Ballardini family to purchase a portion of the Ballardini Ranch. (*Id.*) Everest is a Minnesota company owned by the same principals as Plaintiff. (*Id.*) In 1998, the Ballardini family transferred title to 1,019 acres of the Ballardini Ranch ("the Property") to Evans Creek,[2] an entity formed by Everest. (*Id.* at 6.) Everest/Evans Creek's principals intended to move to Nevada, build a home on the Property, and develop a master planned community. (*Id.*)

At the time of purchase, the Property was located in the unincorporated territory of Washoe County. (*Id.*) The northern 419 acres of the property were located within the City of Reno's sphere of influence[3] ("SOI") and were therefore subject to the City's land use planning and zoning regulations. (*Id.*) The remaining southern 600 acres were not. (*Id.*)

**B.     Sphere of Influence and the Regional Plan**

The Truckee Meadows Regional Plan ("Regional Plan")—a comprehensive plan that controls development and manages growth in Washoe County—is updated and implemented every 20 years. (*Id.* at 3.) Under Nevada law, local governments that participate in the Regional Plan are required to amend their own master plans to conform with the provisions of the Regional Plan. (*Id.* at 4.) The City's current master plan was implemented in 2017. (*Id.*) Within the master plan is a land use plan which guides the City's development with the City and its SOI. (*Id.*)

///

---

[2] In the Complaint, Plaintiff refers to itself as Evans Creek Limited Partnership, but in the caption, it is Evans Creek LLC. The parties appear to treat both Evans Creek LP and Evans Creek LLC as the same entity.

[3] Under Nevada law, "'sphere of influence' means an area into which a political subdivision may expand in the foreseeable future." NRS § 278.0274(6).

1    In November 1997, shortly before title to the Property was transferred, Plaintiff

2  requested an amendment to the City's master plan that would include the southern 600

3  acres of the Property in the City's SOI for future annexation. (*Id.* at 6.) The original

4  planning concept for the Property called for up to 2,226 residential units. (*Id.* at 7.)

5  However, Plaintiff withdrew its initial applications to develop the property due to "the overt

6  hostility and threats from community members and government officials from the City and

7  Washoe County." (*Id.*)

8    Plaintiff submitted a renewed development plan and application for a master plan

9  amendment in 2000, which was denied. (*Id.*) That same year, Washoe County adopted a

10  resolution to acquire the Property as part of its Open Space Plan. (*Id.*) Plaintiff asserts

11  the purpose of Washoe County's resolution was "to prevent all attempts to develop the

12  Property as well as to prevent the value of the property from increasing." (*Id.*)

13    In 2002, the Truckee Meadows Regional Planning Commission circulated a draft

14  of the revised Regional Plan. (*Id.* at 8.) The draft showed the entirety of the Property as

15  located within the City's SOI. (*Id.*) Around the same time, Plaintiff filed its first annexation

16  application ("2002 Application"). (*Id.*)

17    But Washoe County opposed the Regional Plan draft that included the southern

18  600 acres of the Property within the City's SOI. (*Id.*) The Truckee Meadows Regional

19  Planning Governing Board ultimately adopted an updated draft that excluded the southern

20  600 acres of the Property from the City's SOI and service area. (*Id.*) Plaintiff withdrew the

21  2002 Application. (*Id.*)

22    The next year, Plaintiff filed its second annexation application ("2003 Application").

23  (*Id.*) Again, Washoe County opposed. (*Id.*) The City denied the 2003 Application. (*Id.*)

24    In 2004, Washoe County initiated eminent domain proceedings to acquire the

25  Property. (*Id.*) Plaintiff filed suit in response, and the parties reached an agreement in

26  2006. (*Id.*) As part of the settlement agreement, Washoe County agreed not to oppose

27  Plaintiff's attempt to include the Property in the Truckee Meadows Service Area. (*Id.*)

28  ///

3

The City then "encouraged" Plaintiff to apply for acceptance of the 600 southern acres into the City's section of the Truckee Meadows Service Area ("Service Area"), as the northern portion of the Property was already included. (*Id.* at 10.) The City represented to Plaintiff that the Property's inclusion in the Service Area would be the first step towards development, with annexation and other approvals to follow. (*Id.*) Accordingly, Plaintiff applied to include the southern 600 acres in the Service Area in 2007. (*Id.*) The City approved the application, and the Property was included in the City's section of the Service Area. (*Id.*)

After the entirety of the Property was placed within the City's Service Area, the City then passed a resolution to change the zoning designation for the Property's southern 600 acres. (*Id.* at 11.) Although the northern 419 acres were zoned for single-family residential use, the southern 600 acres suffered from significant hurdles to development. (*Id.*)

Plaintiff again applied for annexation in 2014 ("2014 Application"). (*Id.*) Along with the 2014 Application, Plaintiff submitted a proposed amendment to the master plan that would rezone the northern and southern part of the Property for mixed-residential and single-family residential use, respectively. (*Id.*) Plaintiff also supplemented the 2014 Application with traffic and fiscal analyses, at the City's request. (*Id.* at 12) City staff then recommended the 2014 Application be denied. (*Id.*) Upon learning of the recommendation, Plaintiff terminated the 2014 Application. (*Id.*)

**C.    The 2020 Annexation Application and City Council Hearing**

On January 27, 2020, Plaintiff again submitted an annexation application ("2020 Application") for the Property. (*Id.* at 13.) City staff recommended approving the 2020 Application. (*Id.* at 14.) The 2020 Application was publicly noticed for a two-part public hearing on May 13 and May 27, 2020, for the City to receive public comment. (*Id.* at 16.)

At the second meeting, the City denied the 2020 Application, "primarily based on the following reasons: (i) Evans Creek did not submit a master plan amendment request; (ii) there is no demand for the mixture of land use types proposed on the Property; (iii)

1  there are alleged private party water rights disputes on the Property; and (iv) fire danger."
2  (*Id.*)

3  Plaintiff asserts that these reasons are pretextual. (*Id.* at 17.) The City expressed
4  different concerns in response to Plaintiff's previous annexation applications, including
5  the City's "desire to maintain open space," the risk of exacerbating "the shortage of
6  neighborhood parks," "deficiencies in emergency access to nearby subdivisions," that
7  development "may cause harm to unidentified and unknown archaeological sites on the
8  Property," that development "would create an annexation island of non-contiguous City
9  property," and that development would "overburden Washoe County School District." (*Id.*)

10  Plaintiff alleges that the City's refusal to grant annexation has wholly deprived the
11  Property of any viable commercial use. (*Id.* at 18.) Plaintiff further alleges that it was
12  treated differently from other developers because it is not aware of any other instance in
13  which the City has similarly denied an annexation request. (*Id.*)

14  **III.   LEGAL STANDARD**

15  A court may dismiss a plaintiff's complaint for "failure to state a claim upon which
16  relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide
17  "a short and plain statement of the claim showing that the pleader is entitled to relief."
18  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While
19  Rule 8 does not require detailed factual allegations, it demands more than "labels and
20  conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v.*
21  *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations
22  must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to
23  survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a
24  claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550
25  U.S. at 570).

26  In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to
27  apply when considering motions to dismiss. First, a district court must accept as true all
28  well-pleaded factual allegations in the complaint; however, legal conclusions are not

1   entitled to the assumption of truth. *See id.* at 678. Mere recitals of the elements of a cause

2   of action, supported only by conclusory statements, do not suffice. *See id.* Second, a

3   district court must consider whether the factual allegations in the complaint allege a

4   plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's

5   complaint alleges facts that allow a court to draw a reasonable inference that the

6   defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does

7   not permit the Court to infer more than the mere possibility of misconduct, the complaint

8   has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679

9   (alteration in original) (internal quotation marks and citation omitted). That is insufficient.

10   When the claims in a complaint have not crossed the line from conceivable to plausible,

11   the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

12   **IV.    DISCUSSION**

13   Plaintiff asserts two claims in the Complaint. First, Plaintiff alleges the City singled

14   it out impermissibly, denying it equal protection under the law.  By denying the 2020

15   Application but granting every other annexation application from developers under NRS

16   § 268.670, Plaintiff claims the City violated the Equal Protection Clause of the Fourteenth

17   Amendment. Second, Plaintiff asserts that denying the 2020 Application constituted a

18   regulatory taking in violation of the Fifth Amendment because refusing to annex the

19   Property deprived it of its development potential and, consequently, the majority of its

20   value, without just compensation.

21   The City argues both claims should be dismissed. As a preliminary matter, the City

22   asserts that Plaintiff has failed to show it is similarly situated to the property owners whose

23   applications were granted, which is a requisite element of pleading a class-of-one equal

24   protection claim. (ECF No. 8 at 4.) But even if Plaintiff had so demonstrated, the City

25   further argues that Plaintiff's equal protection claim could not succeed because the

26   decision to deny the 2020 Application was rationally related to a legitimate government

27   interest. The City next argues that Plaintiff's regulatory takings claim is not ripe because

28   denying the 2020 Application was not a "final decision" about the use of the Property.

1    Moreover, the City argues Plaintiff cannot show an economic impact to the Property or

2    that Plaintiff's expectations about its ultimate use were objectively reasonable.

3         The Court will address each claim in turn.

4         **A.    Equal Protection – Class of One**

5         "The Equal Protection Clause of the Fourteenth Amendment commands that no

6    State shall deny to any person within its jurisdiction the equal protection of the laws, which

7    is essentially a direction that all persons similarly situated should be treated alike." *City of*

8    *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation omitted).

9    "The Supreme Court has recognized that 'an equal protection claim can in some

10   circumstances be sustained even if the plaintiff has not alleged class-based

11   discrimination, but instead claims that she has been irrationally singled out as a so-called

12   'class of one.'" *Gerhart v. Lake Cnty., Mont.*, 367 F.3d 1013, 1021 (9th Cir. 2011) (quoting

13   *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). For a plaintiff to succeed on a

14   class-of-one claim, they must demonstrate the government: "(1) intentionally (2) treated

15   [the plaintiff] differently than other similarly situated property owners, (3) without a rational

16   basis." *Id.* at 1022.

17        **1.    Similarly Situated**

18        Plaintiff alleges it was intentionally discriminated against because the 2020

19   Application was the only annexation application submitted pursuant to NRS § 268.670

20   the City ever denied. (ECF No. 1 at 18.) The City argues the Complaint fails because

21   Plaintiff fails to factually support its assertion that Plaintiff and other applicants for

22   annexation are similarly situated. (ECF No. 8 at 4.) Plaintiff responds that it does not need

23   to establish that the City granted annexation application to property owners who own

24   similar parcels of land. (ECF No. 10 at 4-5.) Instead, Plaintiff contends, its claim is that

25   the City has granted every annexation application "irrespective of the characteristics of

26   the subject properties because decisions related to land use and development projects

27   are reserved for future proceedings." (*Id.* at 5.)

28   ///

1     But "[a]n equal protection claim will not lie by conflating all persons not injured into

2  a preferred class receiving better treatment than the plaintiff." *Thornton v. City of St.*

3  *Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005); *see also Hunters Capital LLC v. City of*

4  *Seattle*, 499 F. Supp. 3d 888 (W.D. Wash. 2020) (dismissing a class-of-one claim for

5  failure to state a claim when plaintiff did not allege "any facts suggesting that they are

6  *similarly situated* to the control group"). "To be considered similarly situated, the plaintiff

7  and [its] comparators must be *prima facie* identical in all relevant respects or directly

8  comparable in all material respects." *Smith v. Cnty. of Santa Cruz*, Case No. 20-cv-00647-

9  BLF, 2020 WL 6318705 at* (N.D. Cal. Oct. 28, 2020). Indeed, courts in this circuit have

10 held that the similarly situated requirement should be enforced "with particularly strictness

11 when the plaintiff invokes the class-of-one theory" to minimize the risk that "almost every

12 executive and administrative decision" becomes federally reviewable. *Warkentine v.*

13 *Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016).

14     The Complaint alleges no facts about the other annexation applications or land, or

15 how the City's decision to approve the other annexations differed from its decision to deny

16 the 2020 Application. As pleaded, Plaintiff provides the Court with no information about

17 the control group apart from the fact that it consists of property owners in Washoe County

18 who applied for annexation. Plaintiff does not assert that approved annexation

19 applications concerned property that are similarly located, of a similar size, at risk to

20 similar financial risks, or considered around the same point in time. Moreover, Plaintiff

21 does not indicate whether the applications that the City approved were brought under the

22 current Regional Plan or under a prior plan, which may have had different stated

23 development objectives.

24     The City's discretionary annexation procedure would make pleading any class-of-

25 one claim difficult, but it is essentially impossible if the Complaint lacks such facts. The

26 Reno Municipal Code states ten factors which govern the City's discretion when

27

28

8

1   determining whether annexation is appropriate. *See* RMC § 18.04.301(d).[4] These factors
2   include the property's location, its proximity to extant services, the need for expansion to
3   accommodate planned growth, and "[a]ny other factors concerning the proposed
4   annexation deemed appropriate for consideration by the city council." *Id.* The decision of
5   whether to annex a piece of property is therefore highly context specific and creates a
6   potentially unique inquiry for each parcel of land the City considers for annexation. Plaintiff
7   makes conclusory allegation the City routinely grants annexation applications
8   "irrespective of the characteristics of the subject properties" when the Complaint lacks
9   any facts to support such an assertion. As pleaded, the Complaint lacks factual support
10  to plausibly allege that Plaintiff is similarly situated to all other property owners in Washoe
11  County who applied for annexation.

12                    **2.    Rational-Basis Review**

13          Even if the Court assumed Plaintiff's class-of-one claim were plausibly pleaded,
14  the City contends the claim would still be facially deficient on the merits. (ECF No. 8 at
15  5.) The City attaches a copy of the minutes from the May 27, 2020 City Council meeting
16  (ECF No. 8-1 ("Meeting Minutes")) to show that the City's decision was undisputedly
17  rationally related to legitimate government interests.

18          At the public hearing, council members expressed concerns about whether the
19  City needs the type of housing supply for which the Property would potentially be zoned
20  (*id.* at 11), conflicts about water rights on the Property (*id.*), the Property's location in a
21  "high hazard area prone to fire danger" (*id.* at 12). The City Council noted that the 2020
22  Application did not include a master plan amendment, which, though not required for
23  consideration, is highly encouraged by the City's master plan. (*Id.*) Councilmember
24  Brekhus further explained that the 2020 Application did not meet the ten factors for

25
26
27  _____
28  [4]In the current version of the Reno Municipal Code, this provision was moved to
    RMC § 18.08.401(c)(4), but is otherwise identical.

                                              9

1
2
3

annexation set forth in the Reno Municipal Code. (*Id.*) Because the grounds[5] for the City's decision were rationally related to legitimate government interests, the City argues there is no possibility for relief. (ECF No. 8 at 5-6.)

4
5
6
7
8
9

But Plaintiff argues the City improperly articulates the standard. (ECF No. 10 at 6-8.) While the City argues that its decision to deny the Application was rationally related to legitimate government interests, Plaintiff argues the proper question is whether the City's decision to treat it differently from other similarly situated property owners was rationally related to a legitimate government interest. (*Id.*) Instead of challenging the City's proffered interests as illegitimate, Plaintiff argues that they are pretextual. (*Id.* at 7.)

10
11
12
13
14
15
16
17
18
19
20

The Court agrees that the appropriate inquiry is "whether there is a rational basis for the *distinction*, rather than the underlying government *action*." *Gerhart*, 637 F.3d 1013. But as the Complaint is currently pleaded, this is a distinction without a difference. Plaintiff does not provide any factual support for how the City subjected Plaintiff to unique treatment that it did not require of other property owners whose applications were granted. Instead, Plaintiff only alleges that its application was denied when no other property owner's was. To plausibly assert a class-of-one equal protection claim, Plaintiff must show that its treatment—not just the outcome—was "unique." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th 2008). It is not clear from the Complaint that the City—intentionally or otherwise—subjected Plaintiff to any treatment that similarly situated property owners were not.

21
22
23

Plaintiff's pretext argument does not in and of itself cure this deficiency. "[A] plaintiff can show that a defendant's alleged rational basis for his acts is a pretext for an

24
25
26
27
28

[5]The City requests the Court take judicial notice of their contents. (ECF No. 8 at 6 n.2), which Plaintiff does not oppose (ECF No. 10 at 6 n.1). Although courts typically may not consider materially outside the pleadings when assessing the sufficiency of a complaint under Rul 12(b)(6), taking judicial notice under Federal Rule of Evidence 201 is an exception to this rule. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 988 (9th Cir. 2018). Because "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," the Court will consider the City's Motion under Rule 12(b)(6), not Rule 12(d) as a summary judgment motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But the Court may only consider facts not reasonably subject to dispute within the Meeting Minutes at the motion to dismiss stage. *See Khoja*, 899 F.3d at 999.

1    impermissible motive." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007),

2    *aff'd sum nom. Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008). To assert a pretextual

3    motivation, the plaintiff must plausibly allege "(1) the proffered rational basis was

4    objectively false; or (2) the defendant actually acted based on an improper motive."

5    *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 946 (9th Cir. 2004), *overruled on other*

6    *grounds by Lingle v. Chevron U.S.C. Inc.*, 544 U.S. 528 (2005).

7            As currently pleaded, Plaintiff's allegations that the City's reasoning was

8    "objectively false" is conclusory and lacks factual support. *Id.* Plaintiff does not assert that

9    the area is not in a high hazard area, that the annexation request did not provide a master

10   plan amendment, or that there are unresolved water rights issues, as the City indicated

11   in the Meeting Minutes. (ECF No. 8-1 at 11-12.) Instead, Plaintiff argues that these facts

12   carried an outsized weight and were used to justify an otherwise arbitrary decision. (ECF

13   No. 1 at 17.)

14           Plaintiff's assertion that the City used otherwise true rationales to disguise an

15   improper motive is stronger, but still conclusory. Plaintiff cites to shifting rationales over

16   the years (*id.* at 17-18) and prior attempts by Washoe County to acquire the land for less

17   than its alleged market value (*id.* at 7, 9). But Plaintiff does not clarify how the alleged

18   improper motivations ranging from 15-20 years ago carry over to the actions the City took

19   in 2020. Arguing that the City's reasons for denying annexation in 2004 differ from its

20   reasons for denying annexation in 2020—more than 15 years later, under a new City of

21   Reno master plan, a new Truckee Meadows Regional Plan, and changing climate and

22   population needs—is insufficient to demonstrate pretext without more contemporary

23   information.

24           However, these deficiencies are not necessarily fatal to the claim, as the City

25   suggests, and may potentially be cured by amendment. Accordingly, the Court will

26   dismiss Plaintiff's equal protection claim, with leave to amend.

27   ///

28   ///

**B.    Takings Clause**

Plaintiff also argues that denying the 2020 Application constituted a regulatory taking. (ECF No. 12.) The City counters that Plaintiff's claim is not ripe because the denial was not a "final decision" about the use of the Property. (ECF No. 8 at 10.) But even if the denial were considered a final decision, the City argues that Plaintiff fails to allege sufficient information to support the three regulatory takings factors articulated in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). (*Id.* at 12.)

**1.    Final Decision**

As a preliminary matter, the Court must determine whether denying an annexation application constitutes a "final decision" on land use. "When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel v. City and Cnty. of S.F., Cal.*, 141 S. Ct. 2226, 2228 (2021). This "modest" requirement is met when a plaintiff shows "that 'there [is] no question . . . about how the 'regulations at issue apply to the particular land in question.'" *Id.* (quoting *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 737 (1997)) (substitutions in original). Requiring finality "ensures that a plaintiff has actually been injured by the Government's action and is not prematurely suing over a hypothetical harm." *Id.* at 2230 (internal quotation and citation omitted).

In terms of ripeness, the City argues that denying the 2020 Application was not a final decision because whether an annexation application is approved or denied "does not constitute a determination about *how* the property may be used." (ECF No. 11 at 9.) The Court disagrees.

Plaintiff has plausibly pleaded that denying the 2020 Application effectively forecloses any feasible development on the Property. Despite the fact that the decision to annex or not annex property is not a conclusive determination on how the property may be used, the City does not contest that by denying the 2020 Application, it has determined that Plaintiff cannot, in practice, develop the Property. As a councilmember noted at the May 27 hearing, "We are only addressing an annexation request but annexation is the

1    first step in a development." (ECF No. 8-1 at 11.) The decision not to annex the Property

2    is, in effect, a final decision about what may or may not be developed on the Property.

3        The Court is unpersuaded that Plaintiff is required to take some additional step

4    before the City's decision to deny the 2020 Application is final. The City argues Plaintiff

5    could apply to the Regional Planning Commission or the City to be excluded from the

6    City's SOI and Service Area. (ECF No. 8 at 10.) But contrary to the City's argument,

7    Plaintiff need not seek exclusion from the City's SOI for its claim to be ripe. The Supreme

8    Court has rejected that takings claims brought under § 1983 have an implicit

9    administrative exhaustion requirement. *See Pakdel*, 141 S. Ct. at 2230 (reasoning that

10   requiring a plaintiff to seek an exemption from state enforcement "plainly requires

11   exhaustion"). Requiring Plaintiff here to take further action to exclude the Property from

12   the SOI would create an exhaustion requirement analogous to what the Supreme Court

13   rejected in *Pakdel*.

14       Because the decision to deny the 2020 Application is a final decision, the Court

15   considers Plaintiff's regulatory takings claim ripe and turns to its merits.

16              **2.    Regulatory Taking[6]**

17       "The Takings Clause of the Fifth Amendment states that 'private property [shall

18   not] be taken for public use, without just compensation.'" *Knick v. T'ship of Scott, Pa.*, 139

19   S. Ct. 2162, 2167 (2019) (substitution in original). "A classic taking occurs when the

20   'government directly appropriates private property or ousts the owner from his domain.'"

21   *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020) (quoting

22   *Lingle*, 544 U.S. at 539). "[C]ourts determine whether a regulatory action is functionally

23   equivalent to the classic taking using 'essentially ad hoc, factual inquiries, designed to

24   allow careful examination and weighing of all the relevant circumstances.'" *Id.* (quoting

25

26       [6]The Court accepts Plaintiff's argument that it is alleging a regulatory taking, not a
     categorial *Lucas* taking. (ECF No. 10 at 12 n.4.) However, the Court notes that the
27   language in the Complaint may be interpreted to the contrary. (ECF No. 1 at 20 ("The
     City's denial of the 2020 Annexation Application has so restricted the permissible uses of
28   the Property that Evans Creek has been deprived of all or substantially all of the economic
     value or use of the land.") If Plaintiff amends its complaint, it must clarify whether it is
     alleging the City's actions did in fact deprive the Property of "all" value.

                                          13

1     *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322

2     (2002)). "These inquiries are set forth in the three *Penn Central* factors: (1) '[t]he economic

3     impact of the regulation on the claimant,' (2) 'the extent to which the regulation has

4     interfered with distinct investment-backed expectations,' and (3) 'the character of the

5     governmental action.'" *Id.* (quoting *Penn Central Transp. Co. v. City of New York*, 438

6     U.S. 104, 124 (1978)). "The first and second *Penn Central* factors are the primary factors."

7     *Id.* (citing *Lingle*, 544 U.S. at 538-39).

8        In its Motion, the City argues that Plaintiff has not properly pleaded information to

9     support any of the *Penn Central* factors. (ECF No. 8 at 11-14.) Because the Court agrees

10    that the "primary factors" are insufficiently pleaded, the Court will grant the City's Motion.

11                  **a.**      **Economic Impact**

12        The City claims that because Plaintiff is in the same position it was prior to applying

13    for annexation, denial of the 2020 Application has not deprived the Property of economic

14    value. (ECF No. 8 at 12.) The Court agrees.

15        "In considering the economic impact of an alleged taking, we 'compare the value

16    that has been taken from the property with the value that remains in the property.'" *Colony*

17    *Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (quoting *Keystone*

18    *Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987)). As pleaded, the

19    Complaint lacks any information about the value of the Property when the 2020

20    Application was submitted or its value after the 2020 Application was denied. Accordingly,

21    it is not possible for the Court to determine what the economic impact to the Property is,

22    even taking the allegations in the Complaint as true.

23        Even taking Plaintiff's argument that undeveloped land has "significant economic

24    value" which is lost when development potential is restricted (ECF No. 10 at 14.), "[u]nder

25    the *Penn Central* test, a property owner is not entitled to the most beneficial use of the

26    property." *Comm. For Reasonable Regul. of Lake Tahoe v. Tahoe Reg'l Planning Agency*,

27    365 F. Supp. 2d 1146, 1161 (D. Nev. 2005). To demonstrate economic impact, Plaintiff

28

1    must clearly state what effect the denial of the 2020 Application, specifically, had on the

2    Property.

3                          **b.      Investment-Backed Expectations**

4          Plaintiff's takings claim also fails prong two of the *Penn Central* analysis. "To form

5    the basis for a taking claim, a purported distinct investment-backed expectation must be

6    objectively reasonable." *Colony Cove*, 888 F.3d at 452. "'Distinct investment-backed

7    expectations implies reasonable probability, like expected-rent to be paid, not starry eyed

8    hope of winning the jackpot if the law changes." *Guggenheim v. City of Goleta*, 638 F.3d

9    1111, 1120 (9th Cir. 2010). "Speculative possibilities of windfalls do not amount to 'distinct

10   investment-backed expectations,' unless they are shown to be probable enough

11   materially to affect the price." *Id.* at 1120-21. "Thus, 'unilateral expectation[s]' or 'abstract

12   need[s]' cannot form the basis of a claim that the government has interfered with property

13   rights." *Bridge Aina Le'a*, 950 F.3d at 633-34.

14         The Complaint does not plausibly allege that Plaintiff had objectively reasonable

15   expectations that the 2020 Application would be approved. In its opposition to the City's

16   Motion, Plaintiff points to its allegations about its principals' expectations to develop the

17   Property into a master planned community, and that these expectations "were hardly

18   unconventional" due to the number of successful, similar developments surrounding the

19   Property. (ECF No. 10 at 15-16.) While this is useful background information, those

20   expectations were from 1997. At issue here is whether Plaintiff's expectation that the City

21   would grant the 2020 Application was objectively reasonable. As presently pleaded, that

22   is not apparent—for example, the City had already denied the 2003 Application, and

23   circumstances surrounding the 2002 Application and 2014 Application made Plaintiff to

24   believe they would be unsuccessful. As pleaded, the Complaint does not adequately

25   allege that Plaintiff reasonably believed the 2020 Application's approval was reasonably

26   probable.

27   ///

28   ///

                                              15

1    Because the "primary factors" are insufficiently pleaded, the Court need not reach

2    the third *Penn Central* factor. The Court will grant the City's Motion, and will grant Plaintiff

3    leave to amend their regulatory takings claim.

4    **C.    Leave to Amend**

5    Plaintiff requests leave to amend if the Court dismisses any of Plaintiff's claims.

6    (ECF No. 10 at 18.) The Court has discretion to grant leave to amend and should freely

7    do so "when justice so requires." Fed. R. Civ. P. 15(a); *see also Allen v. City of Beverly*

8    *Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Nonetheless, the Court may deny leave to amend

9    if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request

10   is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the

11   amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522,

12   532 (9th Cir. 2008). Facts raised for the first time in a plaintiff's opposition papers should

13   be considered by the Court in determining whether to grant leave to amend or to dismiss

14   the complaint with or without prejudice. *See Orion Tire Corp. v. Goodyear Tire & Rubber*

15   *Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001).

16   As it is relatively early in the litigation and prejudice or delay is unlikely to result,

17   and the City did not oppose Plaintiff's request, the Court will grant leave to amend. As

18   outlined above, amendment may cure several factual deficiencies in Plaintiff's original

19   Complaint.

20   **D.    Statute of Limitations & Motion to Strike**

21   The City also moves to dismiss "allegations regarding the City's conduct prior to

22   2019" because they are barred by the statute of limitations. (ECF No. 8 at 15.) The Court

23   agrees with Plaintiff that this request is improper under Rule 12(b)(6), as references to

24   the history of the relationship between Plaintiff and the City with respect to the Property

25   are not claims, but background information. To support its two claims, Plaintiff must limit

26   its allegations to the 2020 Application; however, that does not make all prior information

27   relating to the treatment of the Property irrelevant. The Court will therefore deny the City's

28   motion on this ground, as it is not a proper use of Rule 12(b)(6).

1        The City argues in its reply that the Court may consider its request alternatively as

2   a motion to strike under Rule 12(f). (ECF No. 11 at 14.) The Court declines to do so. Per

3   the Court's Local Rules, "[f]or each type of relief requested or purpose of the document,

4   a separate document must be filed and a separate event must be selected for that

5   document." LR IC 2-2(b). Moreover, "[a] Rule 12(f) motion to strike is an extreme and

6   drastic remedy—it is generally disfavored." *Kennedy v. Las Vegas Sands Corp.*, Case

7   No. 2:17-cv-00880-JCM-VCF, 2017 WL 4227941, at *2 (D. Nev. Sept. 22, 2017). If the

8   City truly believes that references to conduct prior to 2019 is immaterial, it must bring its

9   motion to strike separately.

10  **V.     CONCLUSION**

11       The Court notes that the parties made several arguments and cited to several

12  cases not discussed above. The Court has reviewed these arguments and cases and

13  determines that they do not warrant discussion as they do not affect the outcome of the

14  motion before the Court.

15       It is therefore ordered that the City's motion to dismiss (ECF No. 8) is granted in

16  part and denied in part, as specified herein.

17       It is further ordered that Plaintiff is granted leave to file an amended complaint.

18  Plaintiff must file its amended complaint within 30 days.

19       DATED THIS 14th Day of September 2021.

20

21

22                                    MIRANDA M. DU

23                                    CHIEF UNITED STATES DISTRICT JUDGE

24

25

26

27

28